# IN THE UNITED STATES COURT OF APPEALS

# FOR THE ELEVENTH CIRCUIT

_____

### Appeal No. 21-11342-B
_____

### UNITED STATES,

### Appellee

### v.

### WILLIAM BEACH,

### Appellant

_____

### AN APPEAL OF THE JUDGMENT AND SENTENCE
### OF THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF FLORIDA
### DISTRICT COURT CASE NO. 8:18-cr-00293-WFJ-TGW-1

_____

### INITIAL BRIEF OF APPELLANT
_____

**ANNE F. BORGHETTI, ESQ.**
**12211 49th St. N., Ste 1**
**Clearwater, FL 33762-4300**
**Florida Bar # 0843385**
**Telephone: 727-502-0300**
**Facsimile: 727-502-0303**
**E-Mail: Legal@BorghettiLaw.com**
**CJA Counsel for Appellant**

No. 21-11342-B

*United States v. Beach*

## CERTIFICATE OF INTERESTED PERSONS

In compliance with Federal Rule of Appellate Procedure 26.1 and 11th Cir. Rule 26.11, the undersigned hereby certifies that the following listed persons and entities have an interest in the outcome of this particular case:

1. Beach, William Raymond, Appellant;

2. Borghetti, Anne F., Counsel for Appellant;

3. Chapa Lopez, Maria, former United States Attorney;

4. Elm, Donna L., former Federal Public Defender;

5. Hernandez Covington, Hon. Virginia M., United States District Judge.

6. Hoppmann, Karin, Acting United States Attorney;

7. Luka, Philip M., former Counsel for Appellant;

8. Palermo, Thomas N., Assistant United States Attorney;

9. Rhodes, David P., Assistant United States Attorney, Chief, Appellate Division;

10. Simeoni, Serbo, former Counsel for Appellant;

11. Sinacore, Michael C., Assistant United States Attorney;

12. Skuthan, James T., Acting Federal Public Defender;

13. Waterman, David C., Assistant United States Attorney; and

14. Wilson, Hon. Thomas G., United States Magistrate Judge.

## **WEB-BASED CIP**

The Web-based CIP was e-filed with nothing to declare, to the Eleventh Circuit Court of Appeals website, www.ca11.uscourts.gov, on the 7th day of May, 2021.

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant leaves to this Court's discretion the question of whether oral argument would be beneficial to the resolution of this appeal.

## PRELIMINARY STATEMENT

References to documents of record in the district court docket will be cited in this Brief as "Doc." followed by the appropriate document number and, if applicable, page number.  References to the Presentence Report will be cited as "PSR," followed by the applicable paragraph.

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons ............................................................ C1

Statement Regarding Oral Argument ....................................................... i

Preliminary Statement .............................................................................. ii

Table of Contents ..................................................................................... iii

Table of Citations ..................................................................................... v

Statement of Jurisdiction .......................................................................... 1

Statement of the Issue .............................................................................. 2

Statement of the Case ............................................................................... 3

Summary of the Argument ........................................................................ 13

Argument and Citations of Authority ....................................................... 14

I.     THE DISTRICT COURT ERRED IN DENYING MR. BEACH'S
        MOTION FOR A JUDGMENT OF ACQUITTAL ....................................... 14

      A. The Investigation that Mr. Beach Allegedly Sought to Obstruct was
          not an "Official Proceeding" ..................................................... 16

      B. The Government Failed to Present Sufficient Evidence to Permit a
          Finding that Mr. Beach had Intent to Obstruct an "Official
          Proceeding" ............................................................................... 20

      C. The Government Failed to Prove that Mr. Beach was the Person who
          Made the Threat in the Recorded Phone Call ........................... 22

Conclusion ................................................................................................ 24

Certificate of Compliance with Rule 32(a) ............................................... 25

Certificate of Service ............................................................................... 26

iii

# TABLE OF CITATIONS

**Cases**                                                                                          **Page**

*Arthur Andersen LLP v. United States,*
   544 U.S. 696, 125 S.Ct. 2129, 161 L.Ed.2d 1008 (2005) ...............................20

*United States v. Cooper*, 733 F.2d 91 (11th Cir. 1984)........................................11

*United States v. Cuesta*, 597 F.2d 903 (5th Cir. 1979)........................................22

*United States v. Dunn*, 434 F.Supp.2d 1203 (M.D. Ala. 2006)............................17

*United States v. Ermoian*, 752 F.3d 1165 (9th Cir. 2013) ............................... 17-19

*United States v. Friske*, 640 F.3d 1288 (11th Cir. 2011).....................................20

*United States v. Gonzalez*, 922 F.2d 1044 (2nd Cir. 1991) ..................................17

*United States v. Kelley*, 36 F.3d 1118 (D.C. Cir. 1994) .................................. 17-18

*United States v. McCrimmon*, 362 F.3d 725 (11th Cir. 2004)..............................11

*United States v. McDaniel*, 2013 WL 8476819,
   2:13–CR–0015–RWS–JCF (N.D. GA Oct. 2, 2013)........................... 16, 18-19

*United States v. Montor-Torres*, 449 Fed.Appx. 820 (11th Cir. 2011) ................22

*United States v. Ramos*, 537 F.3d 439 (5th Cir. 2008) .................................. 17-19

*United States v. Sutherland*, 921 F.3d 421 (4th Cir. 2019) ............................ 18-19

**Statutes and Rules**

18 U.S.C. § 1505 ............................................................................................. 17-18

18 U.S.C. § 1512.................................................................................3-4, 13-18, 20

18 U.S.C. § 1515...............................................................................15-16, 18-19

28 U.S.C. § 1291 ..................................................................................................1

## TABLE OF CITATIONS (Cont.)

<u>**Statutes and Rules (Cont.)**</u>                                                   <u>**Page**</u>

28 U.S.C. § 2241 ...................................................................................1

28 U.S.C. § 2255 ...................................................................................5

11th Cir. R. 26.11 ...............................................................................C1

FED. R. APP. P. 26.1 ............................................................................C1

FED. R. APP. P. 32 ...............................................................................25

FED. R. EVID. 901 ................................................................................22

U.S.S.G. § 5H1.3 ...................................................................................5

## STATEMENT OF JURISDICTION

Under 28 U.S.C. § 1291, the courts of appeal have jurisdiction from all final decisions of the district courts of the United States, except where a direct review may be had in the Supreme Court of the United States.

The United States District Court for the Middle District of Florida, Tampa Division, had jurisdiction over this cause pursuant to 28 U.S.C. § 2241. The District Court entered its initial judgment and sentence on April 5, 2019. (Doc. 49.) On April 9, 2021, the District Court vacated that judgment and entered an amended judgment. (Doc. 64, 65.) Appellant Beach thereafter filed a notice of appeal on April 21, 2021. (Doc. 69.)

## <u>STATEMENT OF THE ISSUE</u>

I.     Whether the District Court erred in denying the Appellant's motion for judgment of acquittal on a charge of using and attempting to use the threat of physical force against an individual to influence, delay, or prevent the testimony of that individual in an official proceeding?

## STATEMENT OF THE CASE

### (i)    Course of Proceedings and Disposition in the Court Below

Appellant William Beach was charged in an indictment on June 21, 2018 in the Middle District of Florida, Tampa Division, on one count of using and attempting to use the threat of physical force against an individual, T.M., to influence, delay, or prevent the testimony of T.M. in an official proceeding pursuant to 18 U.S.C. §§ 1512(a)(2)(A), 1512(f), and 1512(j). (Doc. 1.)  The indictment specifically alleged that Mr. Beach threatened "to obtain a gun and kill T.M. if T.M. served as a witness for the United States of America, after Beach heard T.M. describe being interviewed by law enforcement and an Assistant United States Attorney." (Doc. 1.)  As to the "official proceeding" element of the charge, the indictment alleged that the testimony of T.M. was to be "in an official proceeding, that is, in connection with an investigation into and subsequent prosecution in the United States District Court for the Middle District of Florida (Tampa Division) of an individual for distribution of fentanyl resulting in death . . ." (Doc. 1.)

Mr. Beach proceeded to a jury trial that on December 17, 2018. (Doc. 60.) The Government called only one witness, a Hillsborough Sheriff's Office Detective who had had contact with Mr. Beach and had met with T.M. to discuss her potential assistance to the Government in the aforementioned distribution of fentanyl investigation. (Doc. 60.)  The Government admitted as exhibits a disc containing

recordings of 74 phone calls made between Mr. Beach and T.M. while Mr. Beach was incarcerated on a state charge unrelated to the fentanyl investigation, a recording of one such specific phone call between Mr. Beach and T.M. on May 7, 2018, a transcript of that call recording, and a copy of an indictment that was filed against a person named Corey Smith on May 21, 2018 in relation to the aforementioned fentanyl investigation. (Doc. 32-2.)

At the close of the Government's case, Mr. Beach moved for a judgment of acquittal, asserting that the Government failed to prove identity, venue, and the essential elements of the charge at issue. (Doc. 60 at 56.)

The District Court denied the motion in part, reserving ruling on only the question of whether the Government proved the allegation pertaining to the penalty provision of subsection 1512(j), which provided "(j) [i]f the offense under this section occurs in connection with a trial of a criminal case, the maximum term of imprisonment which may be imposed for the offense shall be the higher of that otherwise provided by law or the maximum term that could have been imposed for any offense charged in such case."[1] (Doc. 60 at 56-57.)    The Government subsequently abandoned the subsection 1512(j) allegations. (Doc. 60 at 60.)

The jury went to find Mr. Beach guilty of the violation of 18 U.S.C. § 1512(a)(2)(A). (Doc. 31.)

---

[1] 18 U.S.C. § 1512(j).

4

At the sentencing, the Presentence Report proposed a Sentencing Guidelines range falling at total offense level 30 and criminal history category VI.  (Doc. 61 at 16.)  The District Court, however, departed downward pursuant to U.S.S.G. § 5H1.3 to offense level 22. (Doc. 61 at 15-16.)  At that range, the Guidelines proposed a sentence of 84 to 105 months imprisonment. (Doc. 61 at 16.)  The District Court sentenced Mr. Beach to 99 months imprisonment to be followed by a term of three years supervised release. (Doc. 61 at 42.)  The District Court entered its initial judgment and sentence to that effect on April 5, 2019. (Doc. 49.)

On March 5, 2020, Mr. Beach filed a pro se motion to vacate filed pursuant 28 U.S.C. § 2255, which raised, among other grounds, a claim of ineffective assistance of counsel arising from trial counsel's failure to file a notice of appeal. (Doc. 56 at 8.)  On April 9, 2021, the District Court vacated its initial judgment and entered an amended judgment imposing the same sentence it had imposed on April 5, 2019. (Doc. 64, 65.)  Appellant Beach thereafter filed a notice of appeal on April 21, 2021. (Doc. 69.)

Mr. Beach remains incarcerated on the judgment and sentence imposed in this case.

**(ii)**    **Statement of the Facts**

During the events at issue, Appellant Beach had been in a long-term relationship with T.M. (Doc. 60 at 41-42.)  The relationship between Mr. Beach and

T.M. was volatile. (Doc. 60 at 42.)  During the events at issue, they were homeless. (Doc. 60 at 16. 82.)

On November 13, 2017, an individual died as a result of an overdose from fentanyl that had been supplied to him by a person named Corey Smith. (Doc. 60 at 21.)  Law enforcement came to learn that Smith delivered to T.M. the fentanyl that killed that victim. (Doc. 60 at 21-22.)  The detective who testified in Mr. Beach's trial testified that T.M. was a key witness in the Smith investigation. (Doc. 60 at 21-22.)

On February 9, 2018, the detective made contact with T.M. and Mr. Beach on the streets of Tampa. (Doc. 60 at 22.)  While another detective conducted an approximately 30-minute interview with T.M., the detective who testified at the trial stood by and conversed with Mr. Beach. (Doc. 60 at 22-23.)  The detective described that conversation as "pretty pleasant." (Doc. 60 at 22-23.)

Thereafter on March 23, 2018, the detectives again made contact with T.M. and Mr. Beach for purposes of showing T.M. a surveillance video that was believed to depict Corey Smith. (Doc. 60 at 23.)  The detective alleged that, during that encounter, Mr. Beach became irritated with them, told them that T.M. would not be talking to them, and whisked T.M. away. (Doc. 60 at 23-24.)

On May 7, 2018, while Mr. Beach was incarcerated on a trespassing charge, the state detectives again made contact with T.M. (Doc. 60 at 24.)  The detective

testified that the purpose of that contact was to "bring[] her to the U.S. Attorney's Office to speak with her about the facts of the case to prepare her for grand jury." (Doc. 60 at 24.)  The detective and an Assistant United States Attorney went on to meet with T.M. (Doc. 60 at 24.)  The detective testified that T.M.'s potential trial testimony was discussed during that meeting. (Doc. 60 at 24.)  The detective elaborated that "[h]er trial testimony was reviewed as a part of that grand jury preparation." (Doc. 60 at 24.)  He further testified that, after the meeting, "[o]ur whole goal was to set up a federal buy/bust with the drug dealer, Corey Smith, to arrest him and get him with narcotics, for the death of [the overdose victim]." (Doc. 60 at 25.)  T.M. had allegedly agreed to conduct the "buy/bust." (Doc. 60 at 25.)

Later that day, the detective and T.M. were seated in a vehicle when T.M. received a phone call. (Doc. 60 at 25.)  The detective testified that, as T.M. received the call, she told him "Billy" is calling me. (Doc. 60 at 31.)  The detective claimed that T.M. called Mr. Beach "Billy." (Doc. 60 at 31.)  Sometime after answering the call, T.M. began yelling, exited the vehicle, and walked some distance away while continuing to talk on the phone. (Doc. 60 at 31.)  The detective claimed that for some portion of the call that took place while T.M. was in the vehicle, he could hear Mr. Beach yelling. (Doc. 60 at 31.)  The detective testified that sometime later, T.M. hung up the phone, reentered the vehicle and hysterically crying. (Doc. 60 at 32.)

He alleged that T.M. did not thereafter continue to cooperative with him. (Doc. 60 at 35.)

The detective would testify that the Hillsborough County Jail has an inmate phone recording system that records all calls from inmates. (Doc. 60 at 25-26.) In opening statements, Mr. Beach's counsel made reference to Mr. Beach having been arrested and held for failure to appear on a trespassing charge in state court from late April through May 7th. (Doc. 60 at 16.)

At trial, the Government would admit into evidence a disc that contained a recording of 74 phone calls that purportedly took place between Mr. Beach and T.M. while Mr. Beach was incarcerated on the state trespassing charge. (Doc. 32; 60 at 26, 41; Gov. Ex. 4.) The Government also admitted into evidence a separate recording and transcript of a recording of the May 7, 2018 recording that was purported to be a conversation between T.M. and Mr. Beach. (Doc. 32; 60 at 27-29; Gov. Ex. 1-2.) Mr. Beach's counsel did not object to those exhibits. (Doc. 60 at 26-29.) Nonetheless, the Government did not call any witnesses nor present any records to authenticate those recordings. (Doc. 60 at 26-29.)

In the recording of the phone call at issue, the caller is asked to state his or her first and last name. (Doc. 32-1 at 2.) The caller responds "Billy, Billy, Billy, Billy, Billy, Billy." (Doc. 32-1 at 2.) The recording then advises the potential recipient that the call is from "Billy an inmate at the Hillsborough County Sheriff's Office

Falkenburg Road Jail facility." (Doc. 32-1 at 2.)  Later in the recording, the recipient of the call says that she "agreed to make a buy" and would be doing so for $500. (Doc. 32-1 at 4.)

At another point in the recording, the recipient of the call says "I went and talked to the federal...to the federal attorney...he wants me to be a witness.  He...he said he went through everything, over the case and wants me to be a witness and told me to be safe." (Doc. 32-1 at 6.)  The caller goes on to respond "(laughing) you got played dumbass.  You can't see that shit." (Doc. 32-1 at 6.)  After some additional brief discussion, the caller states:

> I have a gun out there.  Somebody left me a gun, put up.  Somebody told me where it's at.  I'm telling you on this recording phone if you go through with that shit I'm gonna' kill you on this recording phone.  I don't give a fuck no more because you straight up disrespected the shit out of me to the utmost.

(Doc. 32-1 at 7.)

Before the recording was played, the Government asked of the detective:

Q: Now, do you know who called Tanya Molish on that call?

A: Yes, sir, I do.

Q: How do you know?

A: Well, she referred to William Beach as "Billy." And when the phone began to ring, due to the fact that she was assisting me with my case, she told me who was calling on the phone. She said, "Billy is calling me." So she told me.

Q: Now, were you present next to her through the entire call?

9

A No, not the entire call.

(Doc. 60 at 31.)

After the recording, the Government, asked of the detective:

Q: And you heard the individual say, "Billy, Billy, Billy" on the call?

A: Yes, sir, I did.

Q: Who is Billy?

A: William Beach.

Q: And do you see him here in the courtroom today?

A: Yes, sir. He'' sitting to my left in a long-sleeved, white/yellow, collared, button-up shirt.

[GOVERNMENT COUNSEL]: Your Honor, I'd ask the record reflect the witness has identified the defendant.

THE COURT: So noted.

(Doc. 60 at 37.)

On cross-examination, the detective was asked if it was true that there was "no evidence to link Mr. Beach to Mr. Smith?" (Doc. 60 at 47.)  The only alleged link that the detective testified to, was the fact that T.M. was Mr. Beach's girlfriend. (Doc. 60 at 47.)  Defense counsel further asked the detective if it was true that he had no information to suggest that Mr. Beach knew Corey Smith. (Doc. 60 at 47.) The detective testified only that Mr. Beach says "C" in multiple jail calls and that believes C refers to Corey Smith. (Doc. 60 at 47-48.)  The detective further testified,

10

however, that he had no information that Mr. Beach was trying to aid Corey Smith or that he was a friend of Corey Smith. (Doc. 60 at 48.)  The detective likewise testified that he did not know what Mr. Beach's purported motive would have been in allegedly threatening T.M. (Doc. 60 at 49.)

The detective further testified on cross-examination that, in a recording of a call that occurred two calls prior to the call-in question, T.M. told the caller who was purported to be Mr. Beach, that she was "going to see the federal attorney." (Doc. 60 at 41.)  The caller responded "Yeah, go do it." (Doc. 60 at 41.)  Additionally, in the call that took place in between that call and the call-in question, the caller said something to the effect of "I can't protect you. I can't protect you if you're doing this. I don't want you doing this." (Doc. 60 at 41.)

On May 21, 2018, a grand jury indicted Corey Smith in connection with the fentanyl overdose investigation. (Doc. 60 at 35.)  At the time of Mr. Beach's trial, the Corey Smith case was scheduled for a trial to be conducted in the Middle District of Florida.  (Doc. 60 at 35-36.)  The detective testified that T.M. was cooperating and expected to be the key witness in that case. (Doc. 60 at 36, 45.)

This appeal follows.

**(iii)**     **Standard of Review**

This Court reviews the sufficiency of the evidence *de novo*. *United States v. McCrimmon*, 362 F.3d 725, 728 (11th Cir. 2004).  In conducting that review, the

Court "views the evidence in the light most favorable to the government, making all reasonable inferences and credibility choices in the government's favor to determine whether a rational jury could have found the defendant guilty beyond a reasonable doubt." *Id.*

## SUMMARY OF THE ARGUMENT

The District Court erred as a matter of law in denying Mr. Beach's motion for a judgment of acquittal. The evidence failed to establish that the investigation that Mr. Beach allegedly sought to obstruct was an "official proceeding" as contemplated in 18 U.S.C. § 1512. Similarly, the Government failed to prove a nexus between the threat and the purported "official proceeding." Finally, the Government failed to present sufficient evidence upon which a reasonable trier of fact could conclude that Mr. Beach was the person who made the threat at issue. The Government elected not to present any evidence to authenticate the recordings of the jail phone call, nor any opinion testimony to allow an inference that Mr. Beach was the person depicted making the threat. The Government thereby failed prove at least three material elements of its case.

## ARGUMENT AND CITATIONS OF AUTHORITY

## I.

## THE DISTRICT COURT ERRED IN DENYING MR. BEACH'S MOTION FOR A JUDGMENT OF ACQUITTAL

The evidence presented against Appellant Beach was insufficient to prove that he made a threat with intent to obstruct an official proceeding. First, the Government failed to prove that the investigation at issue was an "official proceeding" that fell within the definition provided in 18 U.S.C. § 1512. Second, the Government failed to prove that Mr. Beach acted with intent to obstruct such an official proceeding. The circumstances under which the threat was made indicated that Mr. Beach could not have acted with intent to obstruct anything more than an "buy/bust" operation. Finally, and perhaps most critically, the Government failed to present any competent evidence to establish the identity of the person who made the threat contained on the jail phone call recording. The District Court, as a result, erred as a matter of law in denying Mr. Beach's motion for a judgment of acquittal.

The offense that Mr. Beach was charged with required proof that he used "physical force or the threat of physical force against any person" or attempted to do so, "with intent to…influence, delay, or prevent the testimony of any person in an official proceeding." 18 U.S.C. § 1512(a)(2)(A). Subsection (f) of section 1512 further provides:

**(f)** For the purposes of this section--

14

**(1)** an official proceeding need not be pending or about to be instituted at the time of the offense; and

**(2)** the testimony, or the record, document, or other object need not be admissible in evidence or free of a claim of privilege.

18 U.S.C. § 1512(a). The indictment specifically charged that the "official proceeding" at issue in this case was "an investigation into and subsequent prosecution in the United States District Court for the Middle District of Florida (Tampa Division) of an individual for distribution of fentanyl resulting in death..." (Doc. 1.) As the evidence revealed at trial, that "investigation into and subsequent prosecution" was the Corey Smith matter.

Section 1515 defines "official proceeding," for purposes of a section 1512 offense, as:

(A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;

(B) a proceeding before the Congress;

(C) a proceeding before a Federal Government agency which is authorized by law; or

(D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce.

18 U.S.C. § 1515(a)(1).

15

## A. The Investigation that Mr. Beach Allegedly Sought to Obstruct

## was not an "Official Proceeding"

In *United States v. McDaniel*, 2013 WL 8476819, 2:13–CR–0015–RWS–JCF (N.D. GA Oct. 2, 2013), the Northern District of Georgia considered the question of what constitutes an "official proceeding" under section 1512.  In considering that question, the court noted that no decisions of this Court were directly on point to the question at issue at that time. *Id.* at *6.  The court further noted that the circuits that have addressed the issue were split on the question of whether a law enforcement investigation is an "official proceeding." *Id.*  The court ultimately found, however, that "the weight of that authority…supports a conclusion that such investigations are not 'official proceedings' as defined in 18 U.S.C. § 1515(a)(1)." *Id.*

In *McDaniel*, the defendants were alleged in an indictment to have:

> corruptedly [sic] obstruct, influence, and impede an official proceeding, to wit: an investigation being conducted by the Federal Bureau of Investigation (FBI) in which D.B.S. was acting as an undercover informant for the FBI and Michael Griffin, a/k/a "Griff," a law enforcement officer, was acting in an undercover capacity, and (2) to violate Title 18, United States Code, Section 1512(c)(2), in that the defendants would corruptedly [sic] obstruct, influence, and impede an official proceeding, to wit: a federal grand jury investigation into criminal offenses investigated by the FBI, said FBI investigation involving D.B.S. acting as an undercover informant and Michael Griffin, a/k/a "Griff," a law enforcement officer, acting in an undercover capacity.

*Id.* at *1.  The defendants moved to dismiss the indictment, asserting that an FBI investigation was not an "official proceeding," and that "the grand jury investigation

rested on the FBI investigation." *Id.* at *4. In considering the motion, the district court noted that the Ninth Circuit had just then recently held that an FBI investigation is not an "official proceeding" for purposes of section 1512. *Id.* at *3; *see also United States v. Ermoian*, 752 F.3d 1165 (9th Cir. 2013). Aside from the Ninth Circuit, the court noted that the Middle District of Alabama has similarly held that "federal investigations are not 'official proceedings' under § 1512." *Id.* at *8 *citing United States v. Dunn*, 434 F.Supp.2d 1203 (M.D. Ala. 2006). The Fifth Circuit, likewise, had held that a Border Patrol investigation "was not an 'official proceeding' within the meaning of § 1512." *Id.* at *11 *citing United States v. Ramos*, 537 F.3d 439 (5th Cir. 2008). In contrast, the Second Circuit had held that "a DEA investigation is an 'official proceeding,' at least for determining venue." *Id.* at *9 *citing United States v. Gonzalez*, 922 F.2d 1044 (2nd Cir. 1991). In another case, the District of Columbia Circuit reasoned that an investigation of the Office of Inspector General ("OIG") for the United States Agency for International Development ("AID") was a "proceeding" for purposes of 18 U.S.C. § 1505 and 18 U.S.C. § 1512. *Id.* at *10 *citing United States v. Kelley*, 36 F.3d 1118, 1127-28 (D.C. Cir. 1994). The court's focus, however, had been on section 1505 as it noted that "'proceedings' under § 1505 'typically have involved agencies with some adjudicative power, or with the power to enhance their investigations through the issuance of subpoenas or warrants.'" *Id. quoting id* at 1127. The D.C. Circuit reasoned that an OIG

investigation is a proceeding under section 1505 "[b]ecause the OIG 'is empowered to issue subpoenas and to compel sworn testimony in conjunction with an investigation of agency activities.'" *Id. citing id.* The *McDaniel* district court concluded, however, that "it appears that the court did not actually find [in *Kelly*] that the investigation was an 'official proceeding' for purposes of § 1512, but rather simply *assumed* it was by virtue of the parties' representations." *Id.* (emphasis in original). Relying on the aforementioned authorities, the district court found in *McDaniel* that, while a grand jury investigation may be an official proceeding for purposes of section 1512, an FBI investigation was not. *Id.* at *12-13.

Since the *McDaniel* case, the Fourth Circuit has endorsed the holdings of *Ermoian* and *Ramos* and similarly held that an investigation by a United States Attorney's Office is not an official proceeding for purposes of section 1515. *United States v. Sutherland*, 921 F.3d 421, 425-26 (4th Cir. 2019). In reaching that conclusion, the Fourth Circuit provided, "[t]he term 'official proceeding' thus implies something more formal than a mere investigation. That limiting term prevents a statutory sprawl in which the countless communications of citizens with one agency or another of the federal government lay the groundwork for a potential obstruction prosecution." *Id.*

The threat that Mr. Beach allegedly made to T.M. was directed to T.M. helping participate in a "buy/bust" operation. In the recording in which the threat

was made, T.M. says that she "agreed to make a buy" and would be doing so for $500. (Doc. 32-1 at 4.) Shortly thereafter, T.M. says "I went and talked to the federal . . . to the federal attorney . . . he wants me to be a witness. He . . . he said he went through everything, over the case and wants me to be a witness and told me to be safe." (Doc. 32-1 at 6.) The threat was then made soon thereafter. While T.M. had discussed being a witness, the conversation was relating back to the "buy/bust" operation. There was no indication at that point that a grand jury investigation was being contemplated. Under the circumstances, the threat was directed to the agreement to make a buy. That "buy/bust" operation was the equivalent of the FBI investigation that was at issue in *McDaniel*. While the "buy/bust" operation may have been designed to give rise to a grand jury proceeding, as most federal law investigations would, the "buy/bust" operation was the proceeding that Mr. Beach's alleged conduct was directed to. Consistent with the holdings reached in *Ermoian*, *Ramos*, *Sutherland*, and *McDaniel*, the buy/bust operation was not an "official proceeding" within the purview of section 1515.

19

## B.  The Government Failed to Present Sufficient Evidence to Permit a Finding that Mr. Beach had Intent to Obstruct an "Official Proceeding"

Just as the Government failed to prove that an "official proceeding" was pending or was about the be instituted at the time of the offense, it similarly failed to prove a nexus between the obstructive conduct and the "official proceeding," the Government also failed to prove.  With respect to offenses committed under subsection (b) of section 1512, the Supreme Court has held that the Government must prove a nexus between the obstructive conduct and the "official proceeding" at issue. *Arthur Andersen LLP v. United States,* 544 U.S. 696, 708 125 S.Ct. 2129, 161 L.Ed.2d 1008 (2005).  Relying on *Arthur Anderson*, this Court has held that a conviction under subsection (c) of section 1512 also proof of such a nexus. *United States v. Friske*, 640 F.3d 1288, 1292 (11th Cir. 2011).  In reaching that holding, this Court reasoned "as the Supreme Court observed in *Arthur Andersen*, '[i]t is ... one thing to say that a proceeding need not be pending or about to be instituted at the time of the offense, and quite another to say a proceeding need not even be foreseen.'" *Id. quoting Arthur Andersen LLP*, 544 U.S. at 707-08, 125 S.Ct. at 2137. Consequently, this Court found that proof of the requisite intent for obstructing an official proceeding required proof that the defendant "knew of or foresaw an official proceeding and knew that his actions were likely to affect it." *Id.* at 1292 n. 5.

In the instant case, the Government failed to prove that Mr. Beach's conduct was intended to obstruct any "official proceeding." Even assuming that a grand jury investigation was about to be instituted, the evidence failed to establish that Mr. Beach would have had knowledge that such a proceeding was about to be instituted or that his conduct would have been directed at that proceeding. Again, as set forth above, the telephone conversation recordings that the Government submitted established only that Mr. Beach may have intended to obstruct the buy/bust operation. Under the circumstances, he could not have known or had reason to know that obstructing the buy/bust operation would be obstructing a grand jury investigation or any other official proceeding. To be sure, in earlier call shortly before the call at issue, T.M. stated that she was "going to see the federal attorney." (Doc. 60 at 41.) The caller responded "Yeah, go do it." (Doc. 60 at 41.) The threat was not made until the call in which T.M. discussed participating in the buy/bust operation. Notwithstanding the fact that the evidence failed to show that Mr. Beach had knowledge of a grand jury investigation, the circumstances under which the threat was made clearly indicate that the threat was directed at T.M.'s participation in the buy/buy operation. In any event, without knowledge that a grand jury proceeding was being contemplated or was about to be instituted, Mr. Beach could not have had the requisite intent to obstruct a grand jury proceeding. Consequently, the evidence was insufficient as a matter of law to permit a jury to infer that Mr.

21

Beach acted with intent to obstruct an official proceeding.

**C. The Government Failed to Prove that Mr. Beach was the Person who Made the Threat in the Recorded Phone Call**

Assuming for purposes of argument that the threat at issue was a threat intended to obstruct an "official proceeding," the Government failed to prove that Mr. Beach was the person who made the threat. This Court has held that "[i]dentity can be established by inference and circumstantial evidence." *United States v. Montor-Torres*, 449 Fed.Appx. 820, 823 (11th Cir. 2011) *citing United States v. Cooper*, 733 F.2d 91, 92 (11th Cir. 1984). "A speaker's voice may be identified by opinion testimony 'based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.' *Id. citing* FED. R. EVID. 901(b)(5). Assuming a witness "establishes familiarity with an identified voice, it is up to the jury to determine the weight to place on the witness's voice identification." *Id. citing United States v. Cuesta*, 597 F.2d 903, 915 (5th Cir. 1979).

In the instant case, the Government failed to present evidence sufficient to allow a jury to make a determination as to whether Mr. Beach was the person who made the threats at issue. For one, the Government failed to present evidence to authenticate the jail phone call recordings. The Government elected not to present business records or testimony from a custodian of records to prove that the recordings at issue were in fact recordings of telephone calls made from the

Hillsborough County Jail by a person purported to be Mr. Beach. Such records should have, nonetheless, been readily available. From there, the Government further failed to call T.M. as a witness to testify that Mr. Beach was allegedly the person who made the threat to her. Finally, the Government failed to establish that the detective was familiar with Mr. Beach's voice so as to give an opinion that Mr. Beach was the person heard in the recording. On the contrary, the Government simply relied on the unchallenged hearsay testimony from the detective that T.M. had told him that the person on the call was "Billy." In the end, neither the detective, nor any other witness gave any actual opinion testimony that the voice heard in the call was that of Mr. Beach. Just the same, the Government presented no other evidence to identify Mr. Beach as the person who made the threat at issue. The Government's evidence thereby fell short of proving the material element of identity necessary to sustain a conviction.

## <u>CONCLUSION</u>

Based on the foregoing, Appellant William Beach respectfully requests that this Honorable Court reverse the judgment and sentence and remand this case to the district court with instructions to enter a judgment of acquittal.

Respectfully Submitted,

/s/ *Anne F. Borghetti*
ANNE F. BORGHETTI, ESQ.
12211 49th St. N., Ste 1
Clearwater, FL 33762-4300
Florida Bar # 0843385
Telephone: 727-502-0300
Facsimile: 727-502-0303
E-Mail: Legal@BorghettiLaw.com
CJA Counsel for Appellant

24

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

The undersigned certifies that, pursuant to 11th Cir. R. 28-1, this Brief complies with the type-volume limitation of and Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,048 words, excluding the parts exempted by Rule 32(a)(7)(B)(iii).  Microsoft Word software was used to count the words in the foregoing Brief.  This Brief, likewise, complies with the typeface requirements of Rule 32(a)(5) and the typestyle requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point, Times New Roman font.

*/s/ Anne F. Borghetti*
ANNE F. BORGHETTI, ESQ.
12211 49th St. N., Ste 1
Clearwater, FL 33762-4300
Florida Bar # 0843385
Telephone: 727-502-0300
Facsimile: 727-502-0303
E-Mail: Legal@BorghettiLaw.com
CJA Counsel for Appellant

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, on this 20th day of January, 2022.

> /s/ *Anne F. Borghetti*
> ANNE F. BORGHETTI, ESQ.
> 12211 49th St. N., Ste 1
> Clearwater, FL 33762-4300
> Florida Bar # 0843385
> Telephone: 727-502-0300
> Facsimile: 727-502-0303
> E-Mail: Legal@BorghettiLaw.com
> CJA Counsel for Appellant

I FURTHER CERTIFY that four hard copies of the foregoing brief will be furnished to the Clerk of this Court by mail.

> /s/ *Anne F. Borghetti*
> ANNE F. BORGHETTI, ESQ.
> 12211 49th St. N., Ste 1
> Clearwater, FL 33762-4300
> Florida Bar # 0843385
> Telephone: 727-502-0300
> Facsimile: 727-502-0303
> E-Mail: Legal@BorghettiLaw.com
> CJA Counsel for Appellant